Fuchsberg, J.
(dissenting). Unless “down” is “up” and “up” is “down”, I do not see how a determination adverse to the aggrieved civil service employee who is the petitioner in this proceeding can be justified in logic or law. Accordingly, I must vote to reverse and reinstate the judgment at Special Term.
This saga starts with petitioner’s involuntary retirement for alleged emotional disability in March, 1972 following a fatally flawed bureaucratic determination, which this court found it necessary to wipe out (34 NY2d 654). Specifically, when the case finally wended its way here in 1974, we held, mincing no words, that the retirement system had denied the petitioner elementary due process. It gave no proper notice. It kept the medical reports, on which it later claimed it had acted, from the petitioner. It provided him with no opportunity to controvert them.
The result of our decision, as later formally incorporated in a judgment entered by Supreme Court Justice Edward J. Greenfield at Special Term, New York County, was to “vacate”, “annul”, “rescind” and “set aside” the system’s determination. The system’s decision was thus deemed dead; for practical as well as legal purposes, it was as if it had never been. On that assumption, the judgment ordered the system to make an entirely new determination. That there be no delay, it required that this be done within 90 days.
After all, the victim of its administrative misconduct undeservedly was suffering a large and continuing loss of wages and was being forced to undergo the rigors and expense of carrying on a trying litigation to vindicate his rights. But the system took its time, indeed twice the allotted time.
More important, this was not the system’s only evidence of recalcitrance. It is not now disputed that the intent of the court was that the system’s redetermination be one as of 1972, when the petitioner had been so unlawfully separated from his position. Yet, the respondent made no new deter *851 mination as of 1972. Rather, for reasons it was never to explain, it unresponsively chose to limit its remedial action to a declaration that, as of January 10,1975, petitioner was not unfit for service. The net result was that no determination of fitness as of 1972 survived. And none other than the one of normalcy in 1975 was ever made. Seemingly, then, the employee’s entitlement to the wages of which he was deprived during the period between the unwarranted retirement and the tardy restoral would seem to follow as does the day the night.
To suggest that the petitioner did not move to enforce the consequence of the legal and factual circumstances with which he was thus favored does not abide analysis. He took affirmative steps to follow up on the vacating of his undeserved retirement. Absent redetermination by respondent, petitioner pressed for the monetary damages he had suffered from the erroneous ruling that now was no more. Not surprisingly, nisi prius gave full support to the steps he took. Acting on a contested application in the original proceeding, our State Supreme Court, this time in the person of Justice Xavier C. Riccobono, in June, 1976, set the matter down for assessment of the wages lost. Since, as described in the Justice’s implementing order, the “re-examined petitioner” had been found “not mentally incapacitated”, the court ruled that to deprive the petitioner of his lost income during his wrongful “discharge * * * would frustrate and fail to serve the interests of justice”. One therefore cannot brook belief that, having obtained obliteration of the adverse administrative ruling, so that it no longer was outstanding, petitioner, and not the obdurate respondent, should now be faulted for not having pressed for a form of relief premised on an existent, rather than vanished, determination of capacity.
As it was, before the hearings petitioner so initiated were concluded, and before it had been determined that he had fully met any burden to mitigate his losses during the period of imposed disability, another three years were to elapse. At long last, in 1979, an award for $47,976.07, less sums the petitioner “would have contributed if he had not been wrongfully retired”, was forthcoming, this time from *852 Supreme Court Justice Irving Kirschenbaum. Since then, more time has gone by while the appellate process initiated by the system progressed. Notably, in all these years the system took no further steps to define petitioner’s mental health as less than normal, neither as of 1972, nor as of 1975, nor, for that matter, for and as of any of the years of his resumed employment right up to and including 1981. It follows that, as the record stands, it is a long fixed fact that there was never any cognizable basis for his compelled retirement.[1]
Consequently, it seems difficult to say and the Appellate Division did not, that a “necessary implication” of the system’s 1975 resolution, though it expressly spoke contemporaneously of that year alone, “concluded that petitioner was properly retired” almost three years earlier, i.e., in 1972. Beyond this, such assertion is even less supportable when one considers that the clean bill of health the system gave the petitioner in 1975 was founded on the system’s crediting of the medical report of a particular psychiatrist, Dr. John J. Vetter, who, far from agreeing with the diagnostic label of “paranoid personality” on which the system originally had premised its vacated and unsubstituted ruling, not only found no basis for such a diagnosis, but, instead, made clear that petitioner’s emotional health was “entirely within normal limits”. More significantly if possible, Dr. Vetter had come to essentially the same conclusion back in 1972. In restoring the petitioner, the system could hardly have relied primarily on Dr. Vetter’s emphatic findings to command, its restoral of the petitioner had it not then also accepted the negative opinion in which he had certified that the self-same employee manifested an equal absence of any disabling conr dition in 1972. To suggest that the system, at the same time that it adopted the Vetter view, intended to still adhere to *853 its overruled 1972 stance, as I see it, makes little sense. To assert that there is such a “necessary implication” makes even less. If anything, the only permissible “implication” would have to be to the contrary.
Put another way, in light of the irreconcilability of the Vetter reports with the judicially repudiated initial (1972) administrative holding that the petitioner suffered from the insidious, chronic and well-nigh irradicable mental condition known as paranoia, to draw the unfounded inference is to put a premium on the system’s failure to carry out our clear dictate that, if the vacated determination was to be replaced, the system make a redetermination as of 1972. As every judicial body save the present majority of this court agreed, this the system never did.
The judgment for the petitioner, therefore, should be reinstated.[2]
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur; Judge Fuchsberg dissents and votes to reverse in an opinion.
Order affirmed, with costs, in a memorandum.

. Whatever administrative convenience, if any, may have been served by the classification of its 1975 redetermination as one made pursuant to section B3-41.0, it is inescapable that this was not a periodic “medical examination” of the sort which the majority says that ordinance contemplates. Nor, as indicated, did it ever purport to describe petitioner’s condition in 1972. In short, it provides no basis for any “implications”, “necessary” or otherwise, concerning the petitioner as of 1972. Simply put, no basis for the 1972 retirement subsists.

. My response to the footnote in which the majority replies to this writing may be handled ad seriatim: (1) Its ameliorative suggestion that the 1972 determination was set aside “on procedural grounds only” reflects nothing less than the constitutionally protected right to procedural due process. (2) The strained conclusion that the system’s 1975 determination was one newly determining petitioner’s 1972 state of health is based on no more than the pro forma recital “after reviewing your entire case” in the system’s one sentence 1975 decision. The only physician it referred to by name was Dr Vetter; the year 1972 was never mentioned. (3) Though the other facts in this case give strong indication that the system agreed with Dr. Vetter’s 1972 report, I have never suggested that this is “necessarily” so. Rather, my point is that, under the circumstances already detailed, the majority’s resort to the phrase “necessary implication” in describing its speculation as to what the system in 1975 intended as of 1972 runs counter to everything the record reveals. (4) The system’s 1975 determination, by referring to the historical fact that the petitioner was a senior accountant when he was wrongfully retired in 1972, cannot be stretched to imply that a new 1972 determination was intended. (5) Its final item is but a rehash of the unrealistic argument that the petitioner should have contested the 1975 determination, though, so far as one could tell, it found him in good health, did not presume to make a new 1972 determination and did not try to disturb the vacatur of the old one.